Cite as 2023 Ark. App. 163

# ARKANSAS COURT OF APPEALS

DIVISION I
No.  CR-22-505

| | | |
|---|---|---|
| | | Opinion Delivered March 15, 2023 |
| LARRY WILSON CRAIN | | |
| | APPELLANT | APPEAL FROM THE BRADLEY COUNTY CIRCUIT COURT [NO. 06CR-21-10] |
| V. | | |
| | | HONORABLE CREWS PURYEAR, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Larry Wilson Crain appeals after he was convicted by a Bradley County Circuit Court jury of two counts of second-degree sexual assault and was sentenced to serve 240 months' imprisonment for each count to be served consecutively for an aggregate of 480 months' imprisonment.  On appeal, appellant contends that the circuit court erred in denying his motions for directed verdict because the evidence was insufficient to support his convictions.  We affirm.

I.  *Relevant Facts*

Appellant was charged with two counts of second-degree sexual assault in violation of Arkansas Code Annotated section 5-14-125 (Supp. 2021), a Class B felony, and one count of rape in violation of Arkansas Code Annotated section 5-14-103, a Class Y felony.  The

victim is appellant's biological daughter, Minor Child (MC), and the offenses occurred when MC was under fourteen years old. A jury trial was held on January 12, 2022, and the following evidence was presented.

Agent David Tumey of the Arkansas State Police testified that as part of the investigation, appellant was interviewed twice. The first interview was conducted in January 2021 at the Ashley County Sheriff's Office in Hamburg, and the second interview was conducted in February 2021 at the Arkansas State Police Company B Headquarters in Pine Bluff. A video from the second interview was admitted into evidence and played for the jury.

During the interview, appellant admitted touching his daughter inappropriately. He claimed his daughter instigated the encounter when she was "about 15" years old. He stated that he was asleep in the living room and awoke to find her rubbing his penis; he, in turn, rubbed her vagina through her clothing for about ten minutes. He stated that he stopped when his son came into the room. Appellant acknowledged that he was aroused, and he stated, "It was a big mistake." He explained that this incident happened when he was living in Bradley County with his girlfriend, Lynn Cash.

MC testified that during the summer of 2017, she had lived with appellant, her biological father, in Warren, Arkansas. He was living with his girlfriend, Lynn Cash, at the time. She explained that a couple of weeks before her thirteenth birthday, her father entered the bathroom through a locked door when she was taking a shower and touched her vagina. She testified that another incident occurred after she had turned thirteen. While still living with her father that summer in Warren, he entered the bedroom one night when she was

2

sleeping. She said that he pulled the bed covers down and that she told him to stop, but he got on top of her and "stuck his penis inside of [her]." MC explained that he did that for a couple of minutes, and then he left. MC stated that there were no more incidents after that.

MC testified that after the summer had ended, she went to live with her grandmother for a while, and then she lived with her mother after that. She testified that, about a year after moving in with her mother, she had a breakdown in which she started pulling her hair out. When her stepfather asked her what was wrong, she told him. She explained that she had not told anyone before because she was scared.

MC denied the version of the events relayed by appellant during his police interview. She explained that she had been living with her mother when she was fifteen years old. On cross-examination, MC acknowledged that she had previously alleged a similar incident involving appellant when she was about nine years old.

After the State rested, appellant moved for a directed verdict on all counts. The circuit court granted his motion as to count two for second-degree sexual assault, ruling that the evidence presented did not support two counts of second-degree sexual assault. The circuit court denied his motion, however, as to count one for second-degree sexual assault and count three for rape.

Appellant testified on his own behalf. He stated that MC is his daughter and that she lived with him from 2008 to 2011 and again in 2016. He estimated that he lived with Lynn Cash for about two months in 2016. MC and his son would stay with him on the weekends. Appellant claimed that he was never left alone with MC and that his son, Landon

3

Crain, was always with them. Appellant further denied that he had ever had any sexual activity with MC.

Appellant recalled being questioned by the police twice regarding the allegations. He explained that he was interviewed first at the Ashley County Sheriff's Office in Hamburg and then for four hours at the Pine Bluff office of the Arkansas State Police. Appellant alleged that he had been coerced into saying something because the officers had repeatedly asked him the same questions and encouraged him to confess. He denied that it was a true confession and claimed that he was not under oath at that time. He testified that he had confessed only because he thought he had to confess in order to leave the interrogation.

On cross-examination, appellant acknowledged that he had signed and was read his *Miranda* rights and that he specifically initialed next to the statement, "Do you understand that if you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time." Appellant further acknowledged that no one had threatened to not let him go or to arrest him if he did not confess. When questioned further about where he was living around June 30, 2017, he initially stated that he had been living with his parents. However, he later admitted that he could not remember when he had lived with Lynn Cash and that it was "all kind of vague" to him. When questioned why he confessed, appellant reiterated that he had thought he could not leave and that he was so "emotional" that he could not tell the officers that he wanted to leave.

On redirect examination by defense counsel, appellant testified that he had thought that as the questioning went on, the initial statements of his *Miranda* rights no longer

4

applied. He also testified that while he was being questioned in Pine Bluff, his mother and fiancée had to wait in the car while it snowed.

Appellant's mother, Brenda Crain, testified that she drove appellant to his interviews in Hamburg and Pine Bluff since appellant did not have a vehicle. She stated that she sat in the lobby in Hamburg for about an hour. However, she claimed she had to wait in the car for over four hours when appellant was interviewed in Pine Bluff.

Appellant's son, Landon Crain, testified that he was nineteen years old at the time of trial and is MC's brother. He testified that he never witnessed MC and his father alone together.

Defense counsel renewed his motion for directed verdict as to the two remaining counts after the defense rested, and the circuit court denied his motion. The State offered one witness, Stephanie Hayes, in rebuttal. She testified regarding the relationships of all the parties. She explained that she is MC and Landon Crain's mother and appellant's ex-wife. She further testified that, to the best of her knowledge, appellant lived with Lynn Cash in May 2017, just before MC's thirteenth birthday, until July 2017. MC was also living with appellant at that time. Ms. Hayes explained that after appellant moved out, he and MC moved in with his mother.

Appellant did not renew his motion for directed verdict at the close of the State's rebuttal testimony. The jury found appellant guilty of count one of second-degree sexual assault and count three of the lesser included offense of second-degree sexual assault. He

was sentenced to serve 240 months' imprisonment for each count to be served consecutively for an aggregate of 480 months' imprisonment. This appeal followed.

## II. *Motions for Directed Verdict*

Appellant specifically argues on appeal that the circuit court erred in denying his motions for directed verdict. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. In reviewing a sufficiency challenge, we assess the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* Further, the credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Armstrong, supra*.

Before addressing the merits of appellant's argument, we must first determine whether his argument is preserved. Arkansas Rule of Criminal Procedure 33.1 (2021) requires that an appellant move for a directed verdict at the close of the State's evidence and

6

again at the close of all the evidence; the failure to do so waives a challenge to the sufficiency of the evidence on appeal. *See Dickey v. State*, 2016 Ark. 66, 483 S.W.3d 287. In *Dickey*, the supreme court specifically held that the failure to renew a motion for directed verdict after the close of the State's rebuttal testimony waived the issue of sufficiency of the evidence. *Id.* The supreme court further explained that a renewal is more than a matter of mere form; it goes to the substance of the evidence arrayed against the criminal defendant. *Id.* Here, although the appellant initially moved for a directed verdict, he failed to renew his motion after the close of the State's rebuttal testimony. Thus, we agree with the State that appellant's challenges to the sufficiency of the evidence are not preserved for review on appeal, and we affirm appellant's convictions.

Affirmed.

KLAPPENBACH and WOOD, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.